OPINION OF THE COURT
Friedman, J.
The relief petitioner seeks in this proceeding is, in effect, a declaration that he is entitled to receive credit against his 3-to-6-year sentence on a third-degree burglary conviction for a period of approximately 20 months during which he absconded from his parole. Petitioner argues that this benefit should be conferred on him by reason of his conviction of a new felony (attempted assault in the second degree) committed while he was absconding. Although Supreme Court accepted this argument, we find nothing in the governing statute (Executive Law § 259-i) that compels us to apply the law so as to reward an already-delinquent parolee for committing a new felony. We therefore reverse, deny the petition and dismiss the proceeding.
Before setting forth the relevant facts, a brief review of the relevant aspects of the sentencing and parole system is in order. A convicted person released from incarceration on parole continues to serve his or her sentence while on parole and earns credit toward the maximum expiration date of the sentence unless and until the Division of Parole declares that person to be delinquent and revokes parole (Penal Law § 70.40 [1], [3] [a]). If parole is not revoked, a parolee is deemed to be in the legal custody of the Division of Parole “until expiration of the maximum term or period of sentence” (Executive Law § 259-i [2] [b]). When a parolee is declared delinquent, however, the sentence is interrupted as of the date of delinquency, and the interruption continues until the parolee’s return to an institution under the jurisdiction of the Department of Correctional Services (Penal Law § 70.40 [3] [a]). As a result, the term of the interrupted sentence is extended, beyond the original maximum expiration date, for a period of time equal to the delinquency period (see Matter of Tineo v New York State Div. of Parole, 14 AD3d 949, 950 [2005]; People ex rel. Melendez v Bennett, 291 *282 AD2d 590, 590-591 [2002], lv denied 98 NY2d 602 [2002]; Matter of Cruz v New York State Dept. of Correctional Servs., 288 AD2d 572, 573 [2001], appeal dismissed 97 NY2d 725 [2002]; People v Hanna, 219 AD2d 792, 792-793 [1995]).
The Court of Appeals has explained the operation of the foregoing statutory scheme as follows:
“As a general rule, when a prisoner is committed to prison, his sentence begins to run and continues until it has been fully served . . . After he has been imprisoned for the minimum term of his sentence the Parole Board may ameliorate the conditions of his sentence by allowing him to serve the remainder of it outside the walls of the prison on parole. While a prisoner is on parole, his sentence continues to run until its maximum term has expired. However, if a prisoner commits some violation of the conditions of his parole, and the Parole Board declares him a parole delinquent, the running of his sentence is halted until his return to prison where he may be required to serve the maximum amount of his sentence remaining, dating from the time of his act of delinquency” (People ex rel. Petite v Follette, 24 NY2d 60, 62-63 [1969] [citations omitted]).
Generally, a finding of delinquency is made after a final parole revocation hearing conducted pursuant to Executive Law § 259-i (3) (f) and 9 NYCRR part 8005, after compliance with the procedural prerequisites set forth elsewhere in the statute and in 9 NYCRR part 8004. Where, however, a parolee is convicted of committing a new felony while on parole and is sentenced to a new determinate or indeterminate term of imprisonment for that crime, he or she is subject to revocation of parole by operation of law based on the new felony, without any further hearing (Executive Law § 259-i [3] [d] [iii]). Executive Law § 259-i (3) (d) provides in pertinent part:
“If a finding of probable cause [that a condition of parole has been violated] is made pursuant to this subdivision either by a determination at a preliminary hearing [see section 259-i (3) (c)] or by the waiver thereof, or if the releasee has been convicted of a new crime while under . . . parole . . . , the board’s rules shall provide for (i) declaring such person to be delinquent as soon as practicable and shall require reasonable and appropriate action to *283 make a final determination with respect to the alleged violation or (ii) ordering such person to be restored to . . . parole . . . under such circumstances as it may deem appropriate or (iii) when a . . . parolee . . . has been convicted of a new felony committed while under such supervision and a new indeterminate or determinate sentence has been imposed, the board’s rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification. The inmate’s next appearance before the board shall be governed by the legal requirements of said new indeterminate or determinate sentence, or shall occur as soon after a final reversal of the conviction as is practicable.”
Pursuant to Penal Law § 70.25 (2-a), a parolee’s sentence for a new conviction must run consecutively to the undischarged term of the sentence for the prior conviction.
Having set forth the relevant statutory scheme, we now turn to the facts of this case, which are essentially undisputed. In February 1998, petitioner was convicted of third-degree burglary and sentenced to a term of 3 to 6 years. He was released to parole in August 2004, and was to remain subject to parole supervision until the undischarged term of his sentence expired in January 2007.[1] On November 22, 2004, the Division of Parole issued a violation of release report, charging that petitioner had committed five violations of the conditions of his release during September and October of 2004.[2] On the same date, the Division issued a warrant for petitioner’s detention (see Executive Law § 259-i [3] [a]; 9 NYCRR 8004.2). Petitioner, however, had absconded, and his whereabouts remained unknown to the Division for the following 20 months.
*284 On July 22, 2006, the Division finally learned of petitioner’s whereabouts when he was arrested on new felony charges of assault and burglary. Two days after the arrest, the Division served petitioner with the November 2004 violation of release report and a notice of violation. A preliminary hearing on the matter of petitioner’s parole violation was held on August 1, 2006 (see Executive Law § 259-i [3] [c]), and resulted in a determination that there was probable cause to believe that he had violated his parole. A final parole revocation hearing was scheduled, but was adjourned pending resolution of the new felony charges against petitioner.
On January 3, 2007, petitioner pleaded guilty to attempted assault in the second degree in satisfaction of the new felony indictment; on January 26, he was sentenced to an indeterminate term of IV2 to 3 years. On February 16, 2007, the Division of Parole served petitioner with a final declaration of delinquency, dated February 6, 2007, which, pursuant to Executive Law § 259-i (3) (d) (iii), declared that his January 2007 felony conviction established his delinquency on his parole obligations as of July 22, 2006, the date of his arrest on the new charges.
The February 2007 final declaration of delinquency made no reference to the violations charged in the November 2004 violation of release report. To resolve those charges—which were unrelated to the incident underlying the January 2007 guilty plea and were not at issue in the prosecution leading to that conviction—the Division of Parole scheduled a parole revocation hearing. Before the hearing was held, petitioner commenced this proceeding under CPLR article 78, seeking a writ of prohibition precluding respondent, the Chief Administrative Law Judge of the Division of Parole, from conducting a parole revocation hearing based on the November 2004 charges. Supreme Court granted the petition, holding that the automatic revocation of parole triggered by the January 2007 conviction, pursuant to Executive Law § 259-i (3) (d) (iii), somehow precluded the Division of Parole from taking any further action on the preexisting November 2004 charges. We do not find this reasoning persuasive.
The statutory provision for the automatic revocation of parole upon the parolee’s “convict[ion] of a new felony committed while under such supervision” (Executive Law § 259-i [3] [d] [iii]) simply does not address whether the new conviction has any impact on delinquency proceedings based on parole violations that allegedly took place before the new felony was com *285 mitted. Petitioner points to nothing in the statute or its legislative history indicating that the Legislature, in enacting section 259-i (3) (d) (iii), intended a parolee’s conviction of a new crime committed while on parole to have the effect of abrogating delinquency proceedings based on prior alleged violations, thereby allowing the parolee to receive credit against his prior sentence for time during which he was actually delinquent in the observance of his parole obligations or, as here, was absconding from parole entirely. Stated otherwise, nothing in section 259-i (3) (d) indicates that the triggering of subparagraph (iii) by a parolee’s new felony conviction cuts off the operation of subparagraph (i) with respect to ordinary parole violations committed before the commission of the new felony.
The Court of Appeals has recognized that the automatic revocation provision of Executive Law § 259-i (3) (d) (iii)
“was intended to dispense with the requirement of a final revocation hearing in only the one instance where the hearing served no apparent purpose— that is, where the parolee has been convicted of a new felony and has been sentenced to a new . . . sentence. In those circumstances, a final parole revocation hearing would be a vain gesture because no fact finding by the Board of Parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole. The court of conviction and sentence would have already indisputably established that reality” (People ex rel. Harris v Sullivan, 74 NY2d 305, 310 [1989]).
Here, petitioner’s January 2007 conviction does not change the fact that a final revocation hearing with respect to the violations charged in November 2004 will serve the purpose of determining whether petitioner had become delinquent in observing his parole obligations—thereby interrupting the running of his sentence on the 1998 conviction—as of November 2004, 20 months before the commission of the crime underlying the January 2007 conviction. After all, the January 2007 conviction established nothing with regard to the November 2004 charges. Hence, a final revocation hearing with regard to the earlier charges will in no way constitute a “vain gesture” of the kind the Legislature intended to avoid by enacting Executive Law § 259-i (3) (d) (iii).
The construction of Executive Law § 259-i (3) (d) urged by petitioner, besides failing in any way to further the legislative *286 intent and lacking any compelling support in the statutory language, would essentially reward petitioner for his commission of a new felony by requiring the Division of Parole to credit him for the 20 months during which he was absconding. Even if petitioner’s reading of the statute were otherwise tenable, we would reject it as running afoul of the rule that a court “will not blindly apply the words of a statute to arrive at an unreasonable or absurd result” (People v Santi, 3 NY3d 234, 242 [2004] [internal quotation marks and citation omitted]).
This Court’s decision in Matter of King v Keefe (268 AD2d 308 [2000]) does not require the illogical result urged by petitioner. Although King affirmed the grant of a writ of prohibition precluding the Division of Parole from conducting a final parole revocation hearing under circumstances bearing a superficial resemblance to those presented here, the record of King indicates that the Division sought a final revocation hearing in that case due solely to a concern that the parolee’s new conviction, for which he had been sentenced to 50 years to life, might be overturned on appeal. Given that the new conviction resulted in such a lengthy sentence, it is not surprising that the Division in King did not make the argument it makes here, namely, that failing to permit a final revocation hearing would result in crediting the parolee for time during which he was delinquent. Moreover, by the time this Court decided the Division’s appeal in King, the new conviction had been affirmed (see People v King, 259 AD2d 763 [1999], lv denied 93 NY2d 926 [1999]), thereby obviating the Division’s sole motivation for holding a final revocation hearing. To the extent, if any, King can be read to require affirming the grant of the petition here, we decline to follow it, for the reasons discussed above.
Finally, although the case has not been cited by petitioner and was not cited by Supreme Court, we note that the Second Department’s decision in Matter of Pierre v Rodriguez (131 AD2d 763 [1987]) does not support affirming the grant of a writ of prohibition against the Division’s holding a final revocation hearing based on the November 2004 charges. The situation in Pierre was the opposite of the scenario here, in that the Pierre parolee, who had absconded before being arrested and convicted for a new felony, unsuccessfully argued that the Division of Parole was required to hold a final parole revocation hearing before declaring his parole to have been revoked based on his new felony conviction. By contrast, in this case, petitioner seeks to bar the Division from conducting a final parole revocation hear *287 ing based on charges unrelated to the new felony conviction. It appears from the Pierre decision that the Division, in the exercise of its administrative discretion, chose not to seek a declaration of delinquency based on the parolee’s absconding in that case, and deemed it sufficient to declare him delinquent based on the new crime. Nothing requires the Division to make the same choice here.
Accordingly, the judgment of the Supreme Court, New York County (Walter B. Tolub, J.), entered September 25, 2007, which granted the petition for a writ of prohibition precluding respondent from conducting a final parole revocation hearing with respect to petitioner’s sentence on his 1998 conviction for burglary in the third degree, should be reversed, on the law, without costs, the petition denied and the proceeding dismissed.
Mazzarelli, J.P., Buckley, Acosta and Freedman, JJ., concur.
Judgment, Supreme Court, New York County, entered September 25, 2007, reversed, on the law, without costs, the petition denied and the proceeding dismissed.

. The record and briefs do not disclose why more than two years of the 3-to-6-year sentence remained undischarged in August 2004, about 6V2 years after the sentence was imposed. The reason for this need not concern us, as there is no dispute as to the time the sentence had left to run when petitioner was released to parole.

. Petitioner was charged with failing to report to his parole officer, changing his residence without notifying his parole officer, failing to provide a urine sample for a substance abuse test, failing to participate in a substance abuse treatment program (which was a condition of his release agreement), and being arrested for avoiding a subway fare (for which he received a 15-day jail sentence after pleading guilty).